BOARD *v.* VAN HOUTEN.

5-1583                                              313 S. W. 2d 843

Opinion delivered June 9, 1958.

*Ted McCastlain,* for appellant.

*Frances D. Holtzendorff,* for appellee.

CARLETON HARRIS, Chief Justice. Appellee, C. D. Van Houten, instituted this action to obtain possession of a certain 80 acres of land located in Prairie County, Arkansas. The complaint was filed in November, 1955, in the Circuit Court of Prairie County (Northern District), and a default judgment was granted in favor of Van Houten February, 1956, which was later set aside.[1] Appellant herein, Anne Board, intervened during the same month, claiming title to the lands in controversy by virtue of a deed from her mother and father, dated April 17, 1947, and recorded March 19, 1954. Upon her motion, the cause was transferred to the Chancery Court of the Northern District of Prairie County.

The background of this litigation is as follows. The Crittenden County Chancery Court entered a decree on July 25, 1952, awarding judgment against Mrs. Howell in the amount of $3,416, and to secure same, a constructive trust was declared. An alias execution was issued by the clerk of the Crittenden County Chancery Court pursuant to said decree. The judgment creditor caused a certified copy of the decree to be recorded with the clerk and recorder of the Northern District of Prairie County on August 14, 1953. As of that date, the record title to the lands in controversy was in the name of Maurine Howell, who had acquired her title by deed in

---

[1] See *Howell* v. *Van Houten,* 227 Ark. 84, 296 S. W. 2d 428.

1945. Subsequently, execution was issued in September, 1953, and an order was issued by the Prairie Chancery Court, restraining the sale until after a further hearing in the Crittenden County Chancery Court; following the refusal of the latter court to set aside its decree, the Prairie County sheriff advertised the lands for sale, and said sale was held on June 5, 1954. Appellee was the highest bidder for the lands, and at the end of the statutory period for redemption, received his sheriff's deed (June 5, 1955).[2] Upon trial of the issues, the chancellor dismissed appellant's intervention and cross complaint, awarded appellee possession of the lands in controversy, and quieted and confirmed his title in and to said lands as against the defendant, Maurine Howell, and the intervener, Anne Board. From such decree, comes this appeal.

For reversal, appellant simply asserts that the chancellor had no authority to cancel appellant's deed, dated April 17, 1947, except for fraud in its procurement, and contends that the appellee failed to meet the burden of proof necessary to establish such fraud. Appellee contends that the deed from Maurine Howell to her daughter was a fraudulent conveyance, made in an attempt to defeat the right of judgment creditors, and furthermore contends, that because appellant had personal knowledge of proceedings to sell the land, and the sale itself, and did not assert any right to said lands for long months afterwards, Mrs. Board is barred by laches and estopped from claiming title to said lands. We shall not discuss the latter contention, since we feel the issue is determined by the former.

After a review of the testimony and exhibits, we have come to the conclusion that the proof was ample to support the chancellor's action in cancelling the deed dated April 17, 1947, for we consider the preponderance of the evidence to reflect that the deed was not actually executed at that time.

---

[2] Appellant also filed a cross complaint against Van Houten, Sheriff E. O. Hamilton, and one Fletcher Livesay, seeking damages allegedly resulting from the wrongful sale of the property. This issue was not developed during the trial.

Appellant testified that she lives at Miami, Florida, with her husband, having lived there since 1956 . . . the property was deeded to her by her father and mother on April 17, 1947 . . . her child had been stricken with polio the summer before, and the purpose of the conveyance was to provide witness and her child with a permanent home . . . she was living on the property at the time of the execution of the deed . . . did not record the deed at the time because she had gotten a divorce in January of 1946 and "I just did not want any legal complications coming up . . . put the deed with some other papers and misplaced it . . . later located it, but saw no need to record it until March, 1954 . . . recorded it at that time because "they were going to sell the property in my mother's name," and witness did not want her own property sold . . . she lived in West Memphis in 1951 and part of 1952 . . . returned to Prairie County in May of 1952, and moved to an adjoining 40 acres, her mother and father living on the 80 acres in question . . . she continued to live on the 40 acres from 1952 to 1956 and her mother and father continued to live on the land here in litigation . . . the reason for such arrangement was that the house on the 40 acres was larger and appellant needed more room . . her mother has paid all taxes on the 80 acres from 1947 through 1956 (except for the year of 1955 when taxes were paid by Van Houten) . . . though her parents have lived upon and farmed the land in question, no rent has been paid by them . . . in 1956, appellant moved to Florida, where she presently resides.

A pertinent exhibit is a deed from Mrs. Howell to her daughter dated August 18, 1953. This deed conveys identically the same property as purportedly was conveyed by the deed of April 17, 1947, and was also recorded on August 18, 1953. When questioned about the need for this deed, if the first had already been executed, Mrs. Board testified that it was executed because the first one had been misplaced. We think it significant that it was recorded on the same date it was executed, though she testified that one reason for not recording

the 1947 deed was that she did not know "it was necessary." Of even more significance is the fact that the 1953 deed was executed and recorded only four days after the certified copy of the judgment of the Crittenden Chancery Court was recorded in Prairie County. Since such deed was executed after the recording of the judgment, it, of course, was of no aid in defeating creditors, as the lien on the real estate had already attached.[3] Such lien could only be defeated if a *bona fide* deed had been executed prior to the recording of the judgment. One of the most incongruous parts of Mrs. Board's testimony dealt with certain language used in both deeds. Appellant testified that the deeds were prepared by her mother. Both convey the property to appellant and contain the typed in language:

"As feme sole, to her sole and separate use, free from debts, contracts, control and marital rights (including courtesy both initiate and consummate) of her present or any future husband she may have, with full power in her to sell, mortgage, convey, encumber, devise or otherwise dispose of same as though she were a feme sole."

This knowledge of the law hardly seems compatible with Mrs. Howell's general background.

The deed, purportedly executed in 1947, was acknowledged by one M. S. Dorsett, justice of the peace, and in going to the home of Mr. Dorsett, the Howells drove several miles further than would have been necessary had they gone to the county seat at Des Arc. Mr. Dorsett testified that the date had already been typed in when presented to him, and that he could not state upon what date the deed was acknowledged. From the testimony:

"Q. You wouldn't know whether it was in 1947 or 1954 when they came before you?

A. Well, I am not swearing to it, not the date, not the exact date on that, no, I am not. * * * It was several years back. I don't keep no records of it."

[3] See Section 29-130, Ark. Stats. 1947 Anno.

Sheriff E. O. Hamilton of Prairie County testified that he conducted the sale on June 4, 1954, and that Mrs. Howell and Mrs. Board were present. He testified they were objecting to the sale, and when asked as to their reason for objecting, answered:

"* * * They stated the land belonged to Mrs. Howell, that she did not want it sold until she could finish her lawsuit, was my understanding.

Q. I will ask you if at any time Mrs. Howell or Mrs. Board, during the execution of sale or before the execution of sale, stated to you that Mrs. Anne Board was the owner of that property or that she was claiming to be the owner?

A. I just don't recall them claiming it was hers."

Appellant admitted that she knew her mother had brought a suit in the Prairie Chancery Court in October, 1953, seeking to restrain the sheriff from proceeding with the sale at that time, and stated: "I was not into it at all, other than it was my property, and she was trying to have this judgment set aside, as far as I knew." She further admitted she was aware that her mother had filed a motion in the Crittenden court to set aside the original judgment, and that that court had entered an adverse ruling. She testified that her reason for not joining in the court actions to prevent the sale was that her child required all of her attention, "and still does." This explanation appears a bit "shallow" since it takes but little time to consult an attorney, and more particularly, since Mrs. Board seems to have had sufficient time to subsequently consult attorneys.

Summarizing the evidence upon which we base this opinion, we find:

1. That although appellant claims the property became hers in April, 1947, she has never paid any taxes, and the taxes through 1956 have been paid by her mother.

2. Her reasons for failure to record the deed are unimpressive. First, she stated she was afraid of legal

complications from her ex-husband (from whom she had been divorced more than a year prior to receiving the deed) concerning the property; subsequently, she misplaced the deed, then, after locating it, failed to record same because she didn't know it was necessary.

3. While stating that the property was given to her as a home for herself and child, she apparently has made no such use of it, since the evidence reflects she has not lived on the place since prior to 1951, though living on an adjoining forty for four years of that time.

4. During the above period, the land involved was farmed by her mother and Mr. Howell, though admittedly no rent was paid to appellant.

5. The deed of August 18, 1953, was executed, *and recorded,* only four days after the certified copy of judgment of the Crittenden Chancery Court was recorded in Prairie County.

6. Appellant admitted she was familiar with her mother's efforts to prevent the sale of the property, but did not join in such efforts.

7. Sheriff Hamilton stated that at the time of the sale in June, 1954, both were present, and claiming the land belonged to Mrs. Howell.

8. The 1947 deed was not recorded until Mrs. Howell's motion to vacate the original judgment had been denied.

We are of the opinion that this evidence was sufficient to establish that the deed dated April 17, 1947, was not actually executed at that time; that it was executed subsequent to the recording of the certified copy of judgment from Crittenden Chancery Court; was executed for the purpose of defrauding creditors, and the Chancellor was justified in cancelling both deeds.

Affirmed.